IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:08-CV-14-D(3)

| | |
|---|---|
| DOROTHY ESPINOZA o/b/o, <br> CHRISTIAN ELIJAH HANNAH, <br>     Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) **MEMORANDUM &** <br> ) **RECOMMENDATION** <br> ) <br> ) <br> ) <br> ) |

      This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings [DE's 18 & 21]. The time for the parties to file any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for the entry of a Memorandum and Recommendation. The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for Supplemental Security Income ("SSI"). For the following reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-18] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-21] be GRANTED, and that the final decision by Defendant be AFFIRMED.

## Statement of the Case

      Plaintiff, acting through his mother, filed an application for SSI on December 16, 2003 (Tr. 14). The application alleged that Plaintiff became disabled on October 9, 2003,

1

due to severe learning problems (Tr. 30, 71). These applications were denied at the initial and reconsideration levels of review (Tr. 14). A hearing was later held before an Administrative Law Judge ("ALJ") on March 13, 2006, who found Plaintiff was not disabled during the relevant time period in a decision dated December 6, 2006 (Tr. 14-27). The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review, rendering the ALJ's determination as Defendant's final decision (Tr. 4-7). Plaintiff filed the instant action on February 25, 2008 [DE-8].

## Analysis

A child is considered disabled for SSI purposes only if the child suffers from a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" and which lasts for a period of not less that 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). A three-step sequential process is utilized when evaluating SSI claims involving children. 20 C.F.R. § 416.924. This process requires the ALJ to consider, in order, whether the child: 1) is engaged in substantial gainful employment; 2) has a severe impairment; and 3) has an impairment that meets, medically equals or functionally equals the requirements of a listed impairment. *Id.* Under the applicable regulations, an ALJ may find a child to be disabled within the meaning of the Social Security Act only if he finds that the child has a severe impairment or combination of impairments that meets, medically equals or functionally equals a listed impairment. 20 C.F.R. § 416.924(d)(1); 42 U.S.C. 1382c(a)(3)(C)(i).

To determine whether a child's impairments functionally equals a listed impairment,

2

the ALJ evaluates a child's functional limitations in six domains: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for himself or herself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

These regulations provide that a child is "disabled" if he or she has an impairment or impairments of "listing-level severity" that is an "extreme" limitation in one of these domains or "marked" limitations in two or more domains. 20 C.F.R. § 416.926a(a). A marked limitation in a domain is found when an impairment interferes seriously with a claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). An extreme limitation in a domain is found when the impairment interferes very seriously with a claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

The Court's role in this case is limited to determining whether substantial evidence exists in the record to support the Commissioner's findings. Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support of particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Where there is substantial evidence to support the finding below, this Court may not substitute its judgment for that of the ALJ. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *Id.* In determining whether substantial evidence supports the Commissioner's decision, the Court must consider whether the ALJ analyzed

3

all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting the evidence. Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-440 (4th Cir. 1997). If substantial evidence exists to support the ALJ's finding that a claimant is not disabled, this Court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. Laws, 368 F.2d at 642.

The ALJ employed the sequential evaluation process in this matter. First, he determined that Plaintiff had not engaged in substantial gainful activity at any relevant to his decision (Tr. 17). At step two, the ALJ determined that Plaintiff has the following severe impairments: 1) an attention deficit hyperactivity disorder ("ADHD"); 2) a behavior disorder; and 3) a learning disorder (Tr. 17). Specifically, the ALJ stated:

> These impairments more than minimally impact the claimant's functional abilities. As a result of these impairments, the claimant has required some special education services, medical treatment, psychotherapy, and prescription medications. Treatment notes reveal that with the use of these modalities, the claimant's behavior, concentration, attention and academic functioning improved.
> While the claimant has complained of a speech disorder and allergic rhinitis, the undersigned finds that these impairments no more than minimally impact the claimant's ability to function. Of note, the claimant has not required any significant medical treatment or intervention as a result of his allergies and this condition has been adequately treated with the use of Zyrtec [Tr. 230-240]. A speech evaluation performed during elementary school was also noted to be generally normal. School records reveal that while the claimant displayed some articulation errors, these errors were found to be developmental and did not require therapeutic services. Additionally, the claimant's teacher has reported that the claimant had normal speech and did not require any intervention for this alleged condition [Tr. 81-161].
> (Tr. 17).

In completing step three, however, the ALJ determined that these impairments were not

4

severe enough to meet or medically equal any listed impairment (Tr. 17). With regard to this finding, the ALJ clarified:

> In so finding, the undersigned has specifically considered Listing 112.00. While the claimant was previously found to have a performance IQ score of 65, this testing was performed before the implementation of significant special education services. A thorough review of the subsequent evidence of record indicates that such a low IQ score fails to adequately represent the claimant's true performance functioning and is inconsistent with the claimant's reported progress and abilities as described by his regular 1st grade teacher [Tr. 81-161]. In addition, the undersigned notes that the claimant was only diagnosed with a learning disability and not borderline intellectual functioning or mental retardation (with corresponding deficits in adaptive functioning). Therefore, the undersigned finds that the claimant does not meet the requirements of 112.05C or 112.05D. Regarding listing 112.08, the undersigned notes that the claimant's behavior disorder apparently only manifested itself in the claimant's relationship with his mother and did not extend to any other adults or children. The evidence of record fails to indicate any pervasive, inflexible, and maladaptive personality traits, which are typical of the child's long-term functioning and not limited to discrete episodes of illness. While the claimant had been diagnosed with and treated for an ADHD, the medical evidence of record fails to document marked inattention, marked impulsiveness, and marked hyperactivity as required by Listing 112.11
> (Tr. 17-18).

Ultimately, the ALJ determined that Plaintiff was not extremely limited in any domain and was only markedly limited in the domain of acquiring and using information (Tr. 20-27). The ALJ's findings in each domain shall now be addressed in turn.

**<u>Acquiring and using information</u>**

This domain considers how well a child is able to acquire or learn information, and how well the child uses the information he has learned 20 C.F.R. 416.926a(g).

Plaintiff underwent a psycho-educational evaluation from October 16, 2003 to

5

Case 7:08-cv-00014-D    Document 27    Filed 10/27/08    Page 5 of 19

November 3, 2003 which was conducted by Dr. Gail Cottle, a school psychologist (Tr. 162-168). Dr. Cottle noted that Plaintiff had repeated kindergarten (Tr. 162). Several special education interventions were implemented because of Plaintiff's lack of progress in the school year (Tr. 162). Despite these interventions, Plaintiff's teacher, Ms. Weston, was concerned that Plaintiff was unable to achieve at grade level expectancy (Tr. 162). She was also concerned that Plaintiff might have a learning problem (Tr. 162). Ms. Weston stated that Plaintiff: 1) has poor reading skills; 2) is deficient in math calculations; 3) achieves below grade level in content areas; 4) has difficulty identifying most letters and numbers; 5) has difficulty at times writing his name correctly; and 6) has difficulty with sound-symbol relationships (Tr. 162). Intelligence testing indicated that Plaintiff had low average cognitive skills (Tr. 163). Specifically, Plaintiff received a verbal composite IQ score of 93, a performance composite IQ score of 65, and a full scale composite IQ score of 77 (Tr. 163). In addition, Plaintiff was achieving well below age and grade level expectancies in all academic areas measured (Tr. 165-166). However, Plaintiff's verbal skills were significantly more developed than Plaintiff's nonverbal or performance skills (Tr. 163-164).

A summary of Plaintiff's Individualized Education Program for 2004-2005 indicated that Plaintiff loved to draw and write (Tr. 90). Plaintiff participated in eight special education sessions each week for 45 minutes per session (Tr. 91). He needed frequent, intensive and closely supervised instruction in the learning disabled resource class to develop his reading, writing and math skills (Tr. 92).

Dr. Margaret Barham, a DDS psychological consultant, completed a childhood

disability evaluation form on March 19, 2004. She stated that Plaintiff had marked limitation in the domain of acquiring and using information (Tr. 182).

On October 21, 2004, Kristen Goodwyn–who was Plaintiff's regular education first grade teacher–assessed Plaintiff's ability to acquire and use information (Tr. 122). She determined that Plaintiff had: 1) a slight problem comprehending oral instructions; 2) a slight problem understanding school and content vocabulary; 3) an obvious problem reading and comprehending written material; 4) an obvious problem comprehending and doing math problems; 5) no problem understanding and participating in class discussions; 6) no problem providing organized oral explanations and adequate descriptions; 7) an obvious problem expressing ideas in written form; 8) a slight problem learning new material; 9) a slight problem recalling and applying previously learned material; and 10) a serious problem applying problem-solving skills in class discussions (Tr. 122). She also noted that Plaintiff was "far behind others in academics" (Tr. 122).

During a psychiatric evaluation on March 3, 2005, Plaintiff's memory was generally intact with no apparent thought disorder (Tr. 208). He was diagnosed with: 1) attention-deficit hyperactivity disorder; 2) disruptive behavior disorder; 3) a learning disorder; and 4) problems in school and at home (Tr. 208).

Terri Blizzard, Plaintiff's teacher, stated on December 7, 2005 that Plaintiff had difficulty focusing and paying attention. However, she also stated that Plaintiff was making progress towards his annual goals in reading, language and math (Tr. 81).

Based on this record, the ALJ determined that Plaintiff had marked limitations in the

7

domain of acquiring and using information. The undersigned finds that there is substantial evidence to support this finding.

**Attending and completing tasks**

This domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the pace at which he performs activities and the ease of changing activities. 20 C.F.R. 416.926a(h).

Ms. Weston observed that Plaintiff had difficulty following directions (Tr. 162). During the psycho-education evaluation conducted from October 16, 2003 to November 3, 2003, Plaintiff was found to be easily distracted and had to be reminded to stay on task (Tr. 163).

However, on February 26, 2004 Dr. Daniel Pistone stated that he would not recommend starting Plaintiff on medication to treat ADHD (Tr. 179). On March 11, 2005, Dr. Pistone stated that "[t]here is no indication of ADHD being a clear-cut issue" and that "stimulant medication is not clearly warranted and is not being started" (Tr. 171). Likewise, on October 21, 2004, Ms. Goodwyn indicated that Plaintiff generally only had slight problems with regard to attending and completing tasks (Tr. 123).

In a March 19, 2004 childhood disability evaluation form Dr. Barham opined that Plaintiff had no limitations in the domain of attending and completing tasks (Tr. 182).

During a March 3, 2005 mental status examination, it was noted that Plaintiff: 1) spoke at a normal rate and tone without pressure; 2) demonstrated no thought disorder; and 3) was alert and oriented (Tr. 208). Moreover, Plaintiff's psychomotor activity was not

8

excessive (Tr. 208). Nonetheless, Plaintiff was diagnosed with ADHD and a disruptive behavior disorder for which he was prescribed Concerta and Risperdal (Tr. 208-209). Thereafter, on April 14, 2005, it was reported that Plaintiff was doing well in school (Tr. 206). Specifically, Plaintiff was doing his work and staying on task (Tr. 206). On August 29, 2005, Dr. Winston Jennings observed that Plaintiff was "doing pretty good" and was "apparently under better self-control" (Tr. 205).

On December 7, 2005, Ms. Blizzard indicated that Plaintiff usually followed the class rules (Tr. 81). She also stated that Plaintiff only recently had difficulty focusing and paying attention (Tr. 81).

A summary of Plaintiff's Individualized Education Program for 2004-2005 stated that one of Plaintiff's strengths was that he was "attentive" (Tr. 90).

Based on this record the ALJ found that Plaintiff had less than marked limitations in the domain of attending and completing tasks (Tr. 23). The undersigned finds that there is substantial evidence to support this finding.

**Interacting and relating with others**

This domain considers how well the child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. 416.926a(i).

During the psycho-educational evaluation conducted from October 16, 2003 until November 3, 2003, it was noted that Plaintiff was cooperative and popular with his

9

classmates (Tr. 162).

On February 26, 2004, Dr. Pistone stated that Plaintiff related to him in an odd manner (Tr. 178). Conversely, Dr. Pistone also observed that Plaintiff "likes his peers in school and is liked by them, the same as with teachers" (Tr. 178). According to Dr. Pistone Plaintiff demonstrated no evidence of a major speech problem (178). Similarly, on March 11, 2004, Dr. Pistone indicated that "although [Plaintiff] relates awkwardly to me, as described by the testing by the teachers, in school, he is popular, he is outgoing, he is liked, etc. . . .[t]here is no evidence of another disruptive behavior disorder" (Tr. 171).

Dr. Barham determined on March 19, 2004 that Plaintiff had no limitations in the domain of interacting and relating with others (Tr. 182).

A summary of Plaintiff's Individualized Education Program for 2004-2005 revealed that Plaintiff was friendly with a good ability to share and a kind attitude (Tr. 90). On October 21, 2004, Ms. Goodwyn opined that Plaintiff generally had no problems in the domain of interacting and relating with others (Tr. 124).

On August 29, 2005, Dr. Jennings stated that Plaintiff "is apparently under better self-control . . .[h]e is interacting better . . . [h]e is not being problematic here in the office" (Tr. 205).

Based on this record the ALJ found that Plaintiff had less than marked limitations in the domain of interacting and relating with others (Tr. 24). The undersigned finds that there is substantial evidence to support this finding.

**Moving and manipulating objects**

This domain considers how well the child is able to move his body from one place to another and how the child moves and manipulates objects. These are called gross and fine motor skills. 20 C.F.R. 416.926a(j).

During the psycho-educational evaluation completed in October-November 2003, it was determined that Plaintiff used an awkward pencil grip and stuck his tongue out while completing writing tasks (Tr. 163). Nonetheless, Plaintiff's eye-hand coordination was estimated to be within the average range (Tr. 166). On March 19, 2004, Dr. Barham stated that Plaintiff had no limitations in the domain of moving about and manipulating objects (Tr. 183). Likewise, Ms. Goodwyn opined on October 21, 2004 that Plaintiff had no limitations in this domain (Tr. 125).

Based on this record the ALJ found that Plaintiff had no limitations in the domain of moving about and manipulating objects (Tr. 25).The undersigned finds that there is substantial evidence to support this finding.

**Caring for himself**

This domain considers how well the child maintains a healthy emotional and physical state, including how well he satisfies his physical and emotional wants and needs in appropriate ways. This includes how the child copes with stress and changes in the environment and whether the child takes care of his own health, possessions, and living area. 20 C.F.R. 416.926a(k).

During the psycho-educational evaluation completed in October-November 2003, no limitations in the domain of caring for himself were noted (Tr. 162-168). On March 19,

2004, Dr. Barham stated that Plaintiff had no limitations in the domain of caring for himself (Tr. 183). Likewise, Ms. Goodwyn opined on October 21, 2004 that Plaintiff generally had no limitations in this domain (Tr. 126).

Based on this record the ALJ found that Plaintiff had no limitations in the domain of caring for himself (Tr. 26). The undersigned finds that there is substantial evidence to support this finding.

**Health and physical well-being**

This domain considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on the child's functioning that were not considered in the evaluation of the child's ability to move above and manipulate objects. [20 C.F.R. 416.929a(l)](20 C.F.R. 416.929a(l)).

During a February 26, 2004 examination, Dr. Pistone indicated that Plaintiff had never been on any medication (Tr. 178). No major neurological or medical problems were noted (Tr. 178). Plaintiff's medical history was generally described as "unremarkable" (Tr. 178). On March 19, 2004, Dr. Barham stated that Plaintiff had no limitations in the domain of health and physical well-being (Tr. 183). Likewise, Ms. Goodwyn on October 21, 2004 did not report any Plaintiff any limitations in this domain (Tr. 127).

Based on this record the ALJ found that Plaintiff had no limitations in the domain of health and well-being (Tr. 27). The undersigned finds that there is substantial evidence to support this finding.

**Plaintiff's assignments of error**

Based on his determinations in each domain, the ALJ concluded that Plaintiff was not disabled at any time through the date of his decision (Tr. 27). Moreover, the ALJ considered Plaintiff's impairments both individually and in combination (Tr. 17). The Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. Although Plaintiff lists several assignments of error, these assignments essentially contend that the ALJ improperly weighed the evidence before him. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, his assignments of error are meritless. Nonetheless, the undersigned shall individually address certain of Plaintiff's assignments of error.

**The ALJ evaluated Listing 112.05D correctly**

Plaintiff contends that the ALJ ignored the significance of Plaintiff's low IQ score and neglected to couple it with other significant limitations of function. Specifically, Plaintiff emphasizes that a psychologist assessed Plaintiff's performance IQ score at 65 (Tr. 99). Based on this IQ score and his other alleged limitations, Plaintiff argues that he meets the impairment listed at 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 112.05D. This listing states:

13

> 112.05 Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
> The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied . . .
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function . . .
> 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 112.05D.

The ALJ specifically referred to this listing in his analysis, noting:

> In so finding, the undersigned has specifically considered Listing 112.00. While the claimant was previously found to have a performance IQ score of 65, this testing was performed before the implementation of significant special education services. A thorough review of the subsequent evidence of record indicates that such a low IQ score fails to adequately represent the claimant's true performance functioning and is inconsistent with the claimant's reported progress and abilities as described by his regular 1st grade teacher [Tr. 81-161]. In addition, the undersigned notes that the claimant was only diagnosed with a learning disability and not borderline intellectual functioning or mental retardation (with corresponding deficits in adaptive functioning). Therefore, the undersigned finds that the claimant does not meet the requirements of 112.05C or 112.05D
> (Tr. 17).

Substantial evidence supports the ALJ's finding that Plaintiff did not meet the requirements of Listing 112.05D. Although Plaintiff achieved a performance IQ score of 65, he also received a verbal composite score of 93 and a full scale composite score of 77 (Tr. 163). In a "summary of evaluation results and eligibility determination" it is noted that Plaintiff's "verbal IQ should be used when calculating discrepancies" (Tr. 99). Moreover, Ms. Cottle, a school psychologist who conducted a psycho-educational evaluation of Plaintiff made the following observations regarding Plaintiff's IQ scores:

14

> Because his cognitive skills are not developed evenly, it is likely that the Full Scale Composite Score does not present a valid estimate of [Plaintiff's] true ability, but rather should be considered an "average " score. When looking at ability achievement discrepancies, the Verbal IQ should be considered a more accurate predictor of his potential.
> (Tr. 163-164).

Likewise, on April 1, 2003, school officials opined that Plaintiff had an average (83) IQ score (Tr. 150). Two other doctors, Dr. Pistone and Dr. Jennings, diagnosed Plaintiff with a learning disorder and not mental retardation (Tr. 178-179, 208).

The requirements of the relevant listing are only satisfied when the relevant IQ scores are "valid". Specifically:

> It is clear that the ALJ is allowed some leeway to evaluate other evidence when determining the validity of an I.Q. score . . .[t]he word 'valid' would be superfluous otherwise. Where an I.Q. score is inconsistent with the remainder of evidence in the record on the claimant's daily activities and behavior, it need not be conclusive proof of mental retardation.
> Powell v. Barnhart, 2005 WL 1926613, * 4 (W.D.Va. 2005)(citing Popp v. Heckler, 779 F.2d 14978, 1499 (11th Cir. 1986)).

Likewise, an ALJ "may decline to accept a claimant's performance [on an IQ test] where the claimant has demonstrated a work history inconsistent with those scores, or where the claimant's performance in IQ testing is depressed . . ." Robertson v. Barnhart, 2006 WL 3526901, * 2 (W.D. Va. 2006)(citing, 20 C.F.R. §§ 404.1520 and 416.920; Luckey, 80 F.2d at 666; Murphy v. Bowen, 810 F.2d 433 (4th Cir. 1987)

Substantial evidence supports the ALJ's finding that Plaintiff is functioning at a higher level than his performance IQ score of 65, and thus this assignment of error is meritless.

**The ALJ appropriately assessed the credibility of Plaintiff's mother**

15

Plaintiff also asserts that the ALJ improperly assessed the credibility of Plaintiff's mother. With regard to Plaintiff's mother's credibility, the ALJ made the following findings:

> The undersigned has carefully considered the claimant's statements and those of his mother about his symptoms with the rest of the relevant evidence in the case record. The undersigned finds that the claimant's allegations and those of his mother have been inconsistent with the medical evidence of record, the reports to his physicians, and the treatment sought and received.
>
> Despite the testimony of the claimant's mother, there is no objective evidence of record to support her assertions that the claimant was destructive and aggressive; would destroy toys; would play with knives; was fascinated with fire; and could not be left alone. While Ms. Espinoza complained that the claimant would not even go to the bathroom by himself some times, school records fail to indicate that the claimant displayed any such problem while at school. Ms. Espinoza also testified that the claimant suffered from significant side effects from his medications, including agitation, anxiety, frustration, and appetite loss; however, a review of the medical records indicates that the claimant and Ms. Espinoza apparently failed to complain of any such side effects to the claimant's prescribing physicians or counselors.
>
> The medical evidence of record also reveals that despite the complaints of the claimant's mother regarding her son's functional limitations, the claimant has not apparently required or received a significant amount of medical care for his severe impairments. Indeed, treatment notes reveal a significant gap in treatment from 2003 to 2004 and following 2005. While Ms. Espinoza complained at the hearing that the claimant was resistive to treatment and would often refuse to get in her car to attend scheduled appointments, treatment notes indicate that the claimant got along well with his treating physicians and counselors and that he did not miss a significant amount of medical appointments.
>
> Despite her testimony at the hearing regarding significant functional limitations along with behavioral and academic problems, on February 26, 2004, the claimant's mother reported that the claimant was doing better at school as a result of his individualized education plan (IEP) [Tr. 169-179]. On April 14, 2005, the claimant's mother reported that the claimant was doing well at school and that she had not received any reports of improper, bad, or overactive behavior at school. She further stated that the claimant was doing his work and staying on task. The claimant's mother made repeated comments

> that the claimant's behavior at school and at home was very different with his behavior at home being problematic [Tr. 205-209]. On August 29, 2005, the claimant's mother reported that the claimant was doing "pretty good" with better self-control and better interaction [Tr. 205-209].
>
> Despite her complaints regarding the claimant's behavior, treatment notes also reveal that the claimant's mother delayed in getting the claimant's prescriptions filled, did not give the claimant his prescribed medications, and missed therapy appointments [Tr. 210-229]. At the hearing, Ms. Espinoza admitted that the claimant was not on any prescription medications other than Zyrtec.
>
> There is no medical evidence to corroborate Ms. Espinoza's claims that the claimant's medications caused him to suffer from diabetes mellitus. Of note, there is no objective medical evidence to support a finding that [the] claimant was ever diagnosed with diabetes mellitus. Additionally, there is no objective evidence or any other supporting evidence to support Ms. Espinoza's complaints that the claimant could not manipulate buttons or zippers or tie his shoes. No such limitations were ever noted in any school records despite extensive school testing.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely credible.
> (Tr. 19-20).

There is substantial evidence in the record to support these findings. Reports from Plaintiff's teachers stated that he: 1) was friendly; 2) sat quietly; 3) was cooperative and popular with classmates; 4) expressed anger appropriately; 5) followed rules; 6) respected and obeyed adults; and 7) had a sharing and kind attitude (Tr. 90, 124, 149, 158). Furthermore, when Plaintiff began taking his medication in April 2005, he was described as "responding to the medication" and "generally doing well" (Tr. 206). Conversely, during the hearing in this matter, Plaintiff's mother contended that Plaintiff's behavior worsened after being placed on

17

medication (Tr. 266). She also conceded that the only medication Plaintiff was taking at the time was Zyrtec (Tr. 277).

"Because he had the opportunity to observe the demeanor and to determine the credibility of the [witness], the ALJ's observations concerning questions [of credibility] are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and impairments in assessing Plaintiff's mother's credibility. Likewise, the ALJ's citations to Plaintiff's medical records, as outlined *supra.*, constitute substantial evidence which support his assessment. Accordingly, this assignment of error is meritless.

## Conclusion

For the aforementioned reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-18] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-21] be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 27th day of October, 2008.

_____
William A. Webb
U.S. Magistrate Judge